Submitted August 23, 2016, affirmed June 28, 2017

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RIANNA C. VELASQUEZ,
*Defendant-Appellant.*

Multnomah County Circuit Court
130545740; A158298

400 P3d 1018

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Matthew Blythe, Deputy Public Defender, Office of Public Defense Services, filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Paul L. Smith, Deputy Solicitor General, and David B. Thompson, Assistant Attorney General, filed the brief for respondent.

Before Sercombe, Presiding Judge, and Hadlock, Chief Judge, and DeHoog, Judge.

**SERCOMBE, P. J.**

Defendant appeals a judgment of conviction for initiating a false report, ORS 162.375. Defendant contends that the trial court erred in denying her motion for judgment of acquittal (MJOA) because she did not "initiate" a report as that term is used in the statute. As explained below, we conclude that the trial court correctly construed ORS 162.375 and that the evidence presented by the state was sufficient to support defendant's conviction. Consequently, the court did not err in denying defendant's motion, and we affirm.

When we review a trial court's denial of an MJOA, "we view the evidence in the light most favorable to the state." *State v. Rodriguez*, 283 Or App 536, 537, 390 P3d 1104, *rev den*, 361 Or 543 (2017) (internal quotation marks omitted). We state the facts consistently with that standard.

On May 2, 2013, around 6:00 p.m., Gresham Police Officer Marciano was driving to a priority call, when he came upon a two-vehicle accident that had occurred near the intersection of Glisan and 188th Street. He stopped to see if there were any injuries and spoke with the parties who were involved—one of whom was defendant. Marciano learned that there were no injuries and that the parties intended to exchange information; he left the scene.

That same evening, around 7:00 p.m., Officer Culp was driving on Northeast Multnomah Street, approximately 10 blocks from the location of the two-vehicle accident, when he was flagged down by defendant's fiancé, Coleman; Culp pulled over. Defendant was with Coleman—they were standing in a parking lot near their car, a Chrysler Pacifica. Coleman told Culp that their "car was just hit" and that the car that had hit it had taken off. Moments later, defendant backed up Coleman's story and falsely told Culp that she had heard the crash and saw an older, maroon SUV take off heading west on Northeast Multnomah; she told Culp that she had not seen the driver of the SUV. She also told Culp that she had pulled her car into the parking lot after the crash occurred. The truth was that the damage to the car had resulted from the earlier accident in which defendant had been involved, and that there had not been a hit and run accident.

Culp had doubts about the damage to the car occurring in the manner that defendant and Coleman had reported to him. He followed up by starting to fill out a DMV crash report and by talking to Marciano about the accident that he had come upon earlier in the evening. Marciano confirmed that defendant and the Chrysler Pacifica were the same person and vehicle that he had encountered at the accident at Glisan and 188th. Both police officers went to defendant's residence around 11:00 p.m. and spoke with her. She ultimately recanted her story about the hit and run accident and told them that she was rear-ended at Glisan and 188th. Culp took defendant into custody.

Defendant was charged by information with one count of initiating a false report under ORS 162.375, which provides, in pertinent part:

"(1)   A person commits the crime of initiating a false report if the person knowingly initiates a *** report that is transmitted to a *** law enforcement agency or other organization that deals with emergencies involving danger to life or property."

Defendant waived a jury trial, and her case was tried to the court. After the state's case-in-chief and, again, after presenting her defense, defendant moved for a judgment of acquittal. Defendant's motion relied on *State v. McCrorey*, 216 Or App 301, 172 P3d 271 (2007), in which we had overturned a conviction for initiating a false report when the record demonstrated that an initial report of a hit and run had been true, but that the defendant had lied while later giving a statement to the police. We concluded that the record did not support an inference that the defendant had given false information as a part of the initial report. Defendant argued that her case "line[d] up very well" with *McCrorey*: Coleman had initiated the false report by flagging down the police officer, and defendant was questioned about it later and she provided false information, but she "was not a party to initiating that report whatsoever." The state argued in response that moments after Coleman flagged down Culp and said that his car had been hit, defendant told the officer details of what had occurred in the hit and run, and that those statements were part of the initial

report. The trial court denied defendant's MJOA and, ultimately, found her guilty.

The trial court explained its reasoning for denying defendant's motion:

"I think there's a little bit of room to argue this point, but I do think factually *McCrorey* is * * * inapposite on a number of bases.

"* * * * *

"Particularly reviewing the legislative history and where the legislature was going with this statute, it strikes me that initiating can be more than just the flagging down of the vehicle and providing the first few words of information to the officer responding. * * * I think you can read from this case that initiating is a process, albeit a finite one. But certainly as a matter of law, I'm going to deny your motion, and we're going to proceed with the defense case."

After defendant renewed her MJOA at the end of the trial, the court provided additional reasoning for denying the motion:

"Just to be clear, there's going to be an ending point to an initiation of a false report. But under the facts of this case, at least as I find them to be, having heard all of the testimony, this contact, this discussion, the discussion the officer testified about * * * had a sufficient nexus to the flagging down, this initial contact, that I find it's part of what can fairly be characterized as an initiating process. * * * [A]nd I am denying your motion for that reason."

On appeal, defendant reprises the argument she made to the trial court. That is, she argues that ORS 162.375 criminalizes *initiating* a false report, not providing false information to an officer regarding a preexisting report, and that her conduct in this case did not meet the elements of initiating a false report because there was no evidence that defendant began the report.[1] The state responds that the trial court correctly concluded that defendant could be guilty of initiating a false report where she, acting in concert with another person, falsely reported to a police officer that her

---

[1] Defendant does not dispute that she made false statements to a police officer.

car had been involved in a hit and run accident; therefore, the trial court correctly denied defendant's MJOA.

"We generally review the denial of a motion for a judgment of acquittal * * * to determine whether a rational trier of fact * * * could have found the essential element of the crime beyond a reasonable doubt." *State v. Hunt*, 270 Or App 206, 209, 346 P3d 1285 (2015) (internal quotation marks omitted). However, when "the dispute on review of a ruling on a motion for a judgment of acquittal centers on the meaning of the statute defining the offense, the issue is one of statutory construction" and we review for legal error. *Id.* at 210 (internal quotation marks and brackets omitted).

The parties dispute the meaning of "initiates" as it is used in ORS 162.375, and whether it applies to defendant's conduct. To determine the intent of the legislature, we begin by examining the text and context of the statute, followed by any legislative history provided by the parties, if it is useful to our analysis. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009).

As we stated in *McCrorey*, "initiate" is not statutorily defined; therefore, we consult the dictionary for its plain, natural, and ordinary meaning. 216 Or App at 305. "The dictionary definition of 'initiate' is 'to begin or get going.' The term connotes proactive, as opposed to reactive, conduct." *Id.* (quoting *Webster's Third New Int'l Dictionary* 1164 (unabridged ed 2002)). In addition, we examined the legislative history of ORS 162.375 and determined that the legislature used the word "initiate" to clarify that the statute was "directed to the report of an emergency situation" and that "the legislature clearly intended to exclude unsworn, oral falsifications made in response to police questioning." *McCrorey*, 216 Or App at 306 (internal quotation marks and brackets omitted).

We recently explained that,

"[u]nder *McCrorey*, and our recent decision in *State v. Strouse*, 276 Or App 392, 366 P3d 1185 (2016), evidence that a person has lied in response to police questioning in the course of an investigation is not enough to convict the person of initiating a false report. *McCrorey*, 216 Or App at 306; *see also Strouse*, 276 Or App at 404. The evidence must show more; it must

permit a finding that defendant knowingly started or 'set going' the transmission of a false alarm or a false report to one of the statutorily designated organizations. *State v. J. L. S.*, 268 Or App 829, 835, 343 P3d 670 (2015)."

*State v. Branch*, 279 Or App 492, 496, 381 P3d 1082, *rev allowed*, 360 Or 568 (2016) (brackets omitted).

Defendant essentially contends that her conduct was reactive—that she lied in response to police questioning—as opposed to starting a false report. That is so, according to defendant, because, at the time that she made her statements to the officer, Coleman had already notified the officer that their car had been involved in a hit and run. Thus, she asserts, she could not be found guilty of initiating a report that had already been initiated. We disagree with defendant's characterization of her conduct.

As the trial court stated, "initiating can be more than just the flagging down of the [police] vehicle and providing the first few words of information to the officer responding." The state's evidence, here, was that Coleman flagged down the officer and told him that their car had been hit and that the car that hit it had taken off. Defendant, who was present when Coleman made that statement, added information to Coleman's statement—the details that the car that had taken off was an older, maroon SUV. The trial court determined that there was a sufficient nexus between the initial contact by Coleman and the ensuing discussion among Culp, Coleman, and defendant to find that the discussion was "part of what can fairly be characterized as an initiating process."

Both defendant and Coleman participated in the conversation with the officer. That conversation was the initiated report. Thus, both defendant and Coleman jointly initiated a single, false report to Culp.

We agree that when, as here, the evidence shows that two persons acted in concert and simultaneously made a false report to a police officer, each could commit the crime of initiating a false report. Thus, the trial court did not err in denying defendant's MJOA.

Affirmed.